UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ADRIENNE LAMORTE, | : | ACTION NO. |
| *Plaintiff* | : | 3:01CV00998(SRU) |
| | : | |
| v. | : | |
| | : | |
| JOHN LEONARD, | : | |
| | : | |
| *Defendant.* | : | April 5, 2004 |

**JOINT TRIAL MEMORANDUM**

**(1)   TRIAL COUNSEL**

    Plaintiff:    Karen Lee Torre
                    Law Office of Karen Lee Torre
                    51 Elm Street, Suite 307
                    New Haven, CT 06510
                    Tel.: (203) 865-5541
                    Fax: (203) 865-4844
                    E-Mail: KTorre@choiceonemail.com

    Defendant:    Joseph A. Jordano
                    Assistant Attorney General
                    55 Elm Street, 4th Floor
                    P.O. Box 120
                    Hartford, CT  06141-0120
                    Tel.: (860) 808-5340
                    Fax: (860) 808-5383
                    E-Mail: Joseph.Jordano@po.state.ct.us

**(2)   JURISDICTION**

      The plaintiff contends that the basis for the court's subject matter jurisdiction is

Sections 1331 and 1343(3) of Title 28 of the United States Code.  The plaintiff also

invoked pendent jurisdiction of the Court to causes of action which arise under the

Constitution and the laws of the State of Connecticut.

1

**(3)    JURY-NONJURY**

This is a jury case.

**(4)    LENGTH OF TRIAL**

It is estimated that the plaintiff's case will take 2-3 days to present and that the defendant's case will take 2-3 days to present.

**(5)    FURTHER PROCEEDINGS**

None

**(6)    NATURE OF CASE**

This is an action brought pursuant to 42 U.S.C. Section 1983 by a Connecticut State Trooper alleging adverse employment actions and retaliation for speech and disclosures protected by the First Amendment.

**A.    Plaintiff's Contentions**

The plaintiff alleges while she was employed by the Connecticut State Police in the Polygraph Unit, she disclosed to her superiors information and documents supporting her belief that the Polygraph Unit was issuing faulty examination results and that as a consequence, and in retaliation for such disclosures, plaintiff was subjected to a punitive transfer, disciplinary action, and contrived allegations of misconduct resulting in her being targeting for upsetting and exhausting internal affairs investigations.

### B.    Defendant's Contentions

The defendant denies that he violated the plaintiff constitutional rights. In addition, that the plaintiff's alleged speech was not protected activity under the First Amendment.

The defendant further contends that: (1) he is immune from suit pursuant to the doctrine of qualified immunity; (2) he has been sued in his individual capacity and is immune from an award of injunctive relief pursuant to 42 U.S.C. § 1983; and (3) to the extent that any claims can be construed as being claims against the state or defendant in his official capacity, the claims are barred by the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity.

### C.    Legal Issues

**PLAINTIFF'S ISSUES:**

It is the plaintiff's view that all legal issues, including whether plaintiff's speech was protected as a matter of law, were resolved by the court in summary judgment proceedings. While plaintiff does not anticipate any legal issues, defendant may present legal issues to the court upon the conclusion of all evidence.

**DEFENDANT'S ISSUES**:

1.    Whether the plaintiff can prove a prima facie case under 42 U.S.C. §1983?

2.    Whether the plaintiff engaged in "protected speech" under the First Amendment?

3.    Whether the plaintiff suffered an adverse employment action because she engaged in protected speech?

4,    If the plaintiff's speech was a motivating factor in the decision to transfer the plaintiff from the State Police polygraph unit; whether the defendant would have made the same recommendation for discipline irrespective of her speech?

5.  Whether the plaintiff was selectively treated differently that other similarly situated employees because of her gender in violation of the Equal Protection Clause?

6.  Whether the plaintiff suffered any damages that were proximately caused by the alleged violation of her constitutional rights?

7.  Whether the defendant is immune from liability based on the doctrine of qualified immunity?

**(7)  TRIAL BY MAGISTRATE**

The case has already been set for trial in April 2004.

**(8)  LIST OF WITNESSES**

**For the Plaintiff**

a.  The plaintiff, Adrienne LaMorte, will testify as to all allegations in the complaint, her background and job experience, her communications with the defendant and the subsequent adverse actions she suffered.

b.  The defendant, John Leonard will testify regarding his involvement in the adverse actions complained of.

c.  Joseph Schaedler will be called to testify regarding his communications with the plaintiff regarding the competence of Sgt. Howell.

d.  Leighton Hammond will be called to testify regarding his communications with the plaintiff regarding the competence of Sgt. Howell, standards applicable to polygraph examinations and the necessity of adherence to such standards.

e.  James Jabbour will be called to testified regarding his communications with the plaintiff regarding the polygraph unit and Sgt. Howell.

f.  William Knapp will be called to testify regarding his duties and responsibilities as Post Executive Director, post hiring procedures and requirements, his interaction with the plaintiff and his knowledge of the facts pertinent to a charge of misconduct.

g.  Gary Pfeifer will be called to testify regarding his duties and responsibilities as Certification Officer for Post, post practices and hiring standards, and his knowledge of and involvement in charges of misconduct against the plaintiff.

In addition to the above, the plaintiff may call one or more of the individuals listed as witnesses by the defendant.

**For the Defendant**

a. **Jack Leonard**. The defendant will address all issues surrounding the plaintiff and the rationale for her reassignment from the polygraph unit. He will testify about facts that pertain to the plaintiff's allegations.

b. **Sgt. Randolph Howell**. He was the plaintiff's supervisor. He will testify about his training, appointment as the supervisor at the polygraph unit, his interaction with the plaintiff, his report of a work rule violation by the plaintiff in April 2000, his response to plaintiff's allegations.

c. **Sgt. Alaric Fox.** He was the state trooper assigned to conduct the investigation into the conduct of the plaintiff of disclosing confidential information in 2000; will testify to his investigation and the findings of the investigation; that he was not influenced any way by the defendant to reach certain results; his interactions with Jack Leonard; Jack Leonard's reputation within the department for integrity.

d. **Captain Vincent McSweeney**. He was the temporary commander in charge of the polygraph unit and was the commanding officer who ordered the investigation into the plaintiff's conduct in 2000. He will testify to his knowledge surrounding those events; his receipt of the IA report from Sgt Fox in May 2000, the required procedure that was followed before disciplined was recommended; his interactions with Jack Leonard; Jack Leonard's reputation within the department for integrity.

e. **Sgt. Robert Eddy**. Sgt. Eddy was a senior polygraph expert in the State Police polygraph unit in June 2000. He will testify to his experience and knowledge of polygraph procedures; the way a polygraph works, the psychological reason why candidates are deliberately told that if they fail the exam they cannot be hired; the different training schools; POST requirement for polygraph, who actually gets the results of applicant polygraph tests; confidentiality requirements; the role of polygraph examiner; that the hiring entity can set own standards for weighing polygraph results in hiring process; POST does not have authority to hire or make recommendations regarding hiring; his review of documents provided to him by the defendant regarding Sgt. Howell; the reasons for his conclusions and communication to the defendant about the documents, his interaction with the plaintiff; instances when he disagreed with other examiner conclusions, including the plaintiff; any other fact pertinent to plaintiff's allegations.

f. **Todd Lynch**. He was the Resident State Trooper assigned to the Town of East Lyme who requested a polygraph to be conducted on a potential employee. He

5

will testify to: to his experience and knowledge of polygraph procedures; the way a polygraph works, POST requirement for polygraph, who actually gets the results of applicant polygraph tests; confidentiality requirements; the role of polygraph examiner; that the hiring entity can set own standards for weighing polygraph results in hiring process; POST does not have authority to hire or make recommendations regarding hiring; his interaction with the plaintiff in 2000; the reason his reported then plaintiff for disclosing confidential information; his statement to Internal Affairs; that the plaintiff stepped over the line by contacting POST and disclosing information about the applicant's polygraph; that the applicant was already certified by POST and employed by the town, any other facts pertinent to the plaintiff allegations.

       g.    **Gary Pfeifer**. He was the certification officer for the Connecticut Police Officer Standards and Training ("POST") Council to whom the plaintiff revealed confidential information. He will testify to his knowledge surrounding the communication received by him from the plaintiff.

       h.    **Chief William Knapp**.  He was the executive director of POST whom the plaintiff attempted to speak to regarding the applicant. He will testify to the fact that the plaintiff informed him of the town to which the plaintiff had applied.

       i.    **Lt. Col. Marjorie Kolpa**.  She will testify that Captain Leonard approached her regarding the criticisms the plaintiff alleged against Sgt. Howell, asked if an investigation was appropriate and the rationale for her decision. She will testify that she was the person who was consulted with by the defendant when the IA report regarding the plaintiff's conduct in April 2000, and the discipline that she approved.

       j.    **Jerry McGuire**, state police union representative. He will testify to his knowledge surrounding the discipline handed out to the plaintiff and that at all times she was represented by the union and was fully aware of her decision to voluntarily accept a transfer out of the polygraph unit. He will testify to the difference between a disciplinary transfer and an administrative transfer. He will further testify to the defendant's favorable response to his request to confer with Lt. Col. Kolpa before the plaintiff made her voluntary decision regarding the transfer out of polygraph unit.

       k.    **Adrienne LaMorte**. She will testify to all allegations to the complaint.

       l.    **Detective Tim Madden**.  Member of the polygraph unit who will testify to his interactions with the plaintiff, his training for polygraph work, his interactions with the defendant; POST and state police standards for polygraphs regarding the hiring of police officers.

       m.    **Detective Janice Szcsiul Karcheski**.  . Member of the polygraph unit who will testify to her interactions with the plaintiff, his training for polygraph work, her interactions with the defendant.

      n.    **Ronald Savitsky**, Personnel Administrator for DPS. He will testify to progressive discipline and all proper steps were taken regarding the plaintiff and was treated equally as all other members of the State Police would have been treated, the plaintiff's work history and prior AI or IA investigations.

**(9)    DEPOSITION TESTIMONY**

Defendant may offer some or all of the following deposition testimony of Plaintiff:

9:2-11; 16:1-17:18; 29:5-11; 30:1-10; 30:11-14; 31:10-33:7; 34:4-17; 35:8-22; 40:22-41:17; 55:11-21; 56:23-57:1; 57:4-17; 58:6-12; 66:7-15; 70:20-71:9; 77:16-78:11; 80:19-25; 83:4-12; 84:21-25; 87:5-8; 88-94; 94-101; 110:1-16; 111:23-112:9; 124:3-125:16; 15);13-23; 150:24-151:2; 156:12-17; 157:3-11.

**(10)    EXHIBITS**

**Plaintiff's Exhibits\**

1. Trooper Performance Evaluation and Observation Report - Period from 1995-1996.

2. Trooper Performance Evaluation and Observation Report - Period from 1996-1997.

3. Trooper Performance Evaluation and Observation Report - Period April 1998.

4. Letter from Detective James Wardwell to Detective LaMorte, dated March 26, 1998.

5. Trooper Performance Evaluation and Observation Report - Period from 1997-1998.

6. Trooper Performance Evaluation and Observation Report - Period from 1998-1999.

7. Performance Evaluation of Detective LaMorte between May and October, 1996.

8. Performance Evaluation of Detective LaMorte between July 1996 and April 1997

9. Trooper of the Month Certificate, dated February 1, 1993.

10. Letter from Sandra Kiesel to Lt. Brideau regarding Detective LaMorte, dated November 1988.

11. Letter of response from Lt. Brideau to Sandra Kiesel, dated November 14, 1988.

12. Letter from Colonel Perry to John Collins regarding Detective LaMorte, dated April 29, 1994.

13. Letter from John Collins to Colonel Perry regarding Detective LaMorte, dated April 15, 1994.

14. Letter from Colonel Kirschner to M.E. Ahern regarding Detective LaMorte, dated June 28, 1995.

15. Letter from M.E. Ahern to Colonel Kirschner regarding Detective LaMorte, dated June 22, 1995.

16. Letter from Colonel Kirschner to Edward F. Johnson regarding Detective LaMorte, dated August 29, 1996.

17. Letter from Edward F. Johnson to Colonel Kirschner regarding Detective LaMorte, dated August 22, 1996.

18. Letter from Alfred Abbotts to Lt. McGoldrick regarding Trooper LaMorte, dated September 2, 1987.

19. Letter from Michael Dearington to William McGuire regarding Detective LaMorte, dated September 30, 1997.

20. Internal Affairs interview of William Knapp.

21. Internal Affairs interview of Gary Pfeifer.

22. C.S.P. Polygraph Unit 4-page policy entitled "S.O. #97-1" regarding "specific examination".

23. C.S.P. Polygraph Unit 3-page policy entitled "S.O. #97-2" relating to "pre-employment examinations".

24. Complaint against Personnel containing several dates. (Complainant: Randall W. Nauroth)

25. Complaint against Personnel containing various dates. (Complainant: Vincent E. McSweeney)

26. C.S.P. Internal Affairs Unit Case Management Log re: Case # I.A.-00-027.

27. May 17, 2000 memorandum from Alaric J. Fox to Vincent E. McSweeney.

28. August 14, 2000 letter to plaintiff from defendant.

29. Stipulated Agreement signed by plaintiff 9-14-2000.

30. Witness statement of William Knapp dated 5-2-2000.

31. Internal Affairs Investigation - Notice to Personnel (Adrienne Lamorte) dated April 18, 2000 from Captain Vincent E. McSweeney.

32. C.S.P. Guidelines for Internal Investigation Chapters 5.2 et. seq.

33. August 11, 2000 Memorandum from Gladys Traverso Miller to defendant.

34. C.S.P. A & O Manual Policy Section 5.1.4.

35. August 29, 2000 Memorandum from Gladys Traverso Miller to defendant.

36. Polygraph Examination Scoring Charts and Numerical Analyses (Collectively as one exhibit).

### Defendant's Exhibits

Exhibit A    Internal Affairs ("IA") 00-027, Complaint Against Personnel Form;

Exhibit B    IA 00-027, Case Management Log;

Exhibit C    Letter from Captain Vincent McSweeney to LaMorte, dated April 18, 2000;

Exhibit D    Memorandum from Sgt. Todd Lynch to Sgt. Fox, dated April 25, 2000;

Exhibit E    Memorandum from Sgt. Randolph Howell to Sgt. Alaric Fox, dated April 26, 2000;

Exhibit F    Division of State Policy Polygraph Unit SO #97-2;

Exhibit G    IA 00-027, Statement of William Knapp, dated May 2, 2000;

Exhibit H    Memorandum from Sgt. Todd Lynch to Sgt. Fox, dated May 2, 2000;

Exhibit I    IA 00-027, Transcript of Interview with LaMorte, dated May 3, 2000;

Exhibit J    IA 00-027, Executive Summary, dated May 17, 2000;

Exhibit K    IA 00-027, Internal Affairs Investigation Report, dated May 19, 2000;

Exhibit L    Memorandum from Gladys Traverso Miller to Captain Leonard, dated August 11, 2000;

| | |
|---|---|
| Exhibit M | Letter from Major John Leonard to Adrienne LaMorte, dated August 14, 2000; |
| Exhibit N | Article 15, Section 4(a) of the State Police Bargaining Unit Contract; |
| Exhibit O | Administrative and Operations Manual Section 5.1.4a; |
| Exhibit P | Memorandum from Major Leonard to Miller, dated August 29, 2000; |
| Exhibit Q | Handwritten Calendar Entries by plaintiff for 8/17/00 and 8/29/00; |
| Exhibit R | IA 00-027, Stipulated Agreement, dated September 14, 2000; |
| Exhibit S | Administrative and Operations Manual Section 5.2.2; |
| Exhibit T | Administrative Inquiry ("AI") 00-025, Complaint Against Personnel Form; |
| Exhibit U | AI 00-025, Letter of complaint from candidate to State Police, dated March 4, 2000; |
| Exhibit V | Letter from Major Leonard to LaMorte, dated April 12, 2000. |
| Exhibit W | AI 00-025, Executive Summary from Sgt. Howell to Major Leonard, dated April 25, 2000; |
| Exhibit X | IA-88-015 (II) Investigation and Stipulated Agreement, dated June 1998 |
| Exhibit Y | IA-86-176 Stipulated Agreement, dated February 1987. |
| Exhibit Z | Defendant's Interrogatories #s 11 and 12, dated February 22, 2002; |
| Exhibit AA | Plaintiff's Responses to Interrogatories #s 11 and 12, dated May 8, 2002; |

**(11) ANTICIPATED EVIDENTIARY PROBLEMS/MOTION IN LIMINE**

<u>For the plaintiff</u>

    A.    The plaintiff will object to defendant's Exhibits X and Y as wholly irrelevant to the issues in this action.

    B.    Since the plaintiff will appear at trial the plaintiff will object to the introduction of deposition testimony by defendant as set forth in section 9 above.

    C.    For the same reason as set forth in section B above, plaintiff will object to defendant's Exhibits Z and AA, which are interrogatory answers given by defendant and plaintiff during discovery in this case. Since the parties will appear and testify, said exhibits are inadmissible except when used as necessary on cross-examination for impeachment by indication of a prior and inconsistent statement.

    D.    With respect to the majority of defendant's exhibits, plaintiff will object insofar as defendant offers the documentary evidence for the truth of the matter asserted therein. The plaintiff will not object to the introduction of such evidence for the purpose of showing what information was available to the defendant at the time of his interactions and discipline of the plaintiff, irrespective of the truth or falsity of any out-of-court statements reflected in the materials.

**For the Defendant**

    A.    The defendant has been sued only in his personal capacity. The defendant will object to evidence that is not legally imputable to the defendant personally or to which the defendant had no personal involvement.

    B.    The defendant will object to plaintiff evidence of plaintiff's work history prior to assignment to polygraph unit in 1997 as irrelevant and hearsay.

    C.    Defendant will object to evidence regarding Sgt. Howell's competency to conduct polygraph examinations because such information is immaterial and irrelevant to a retaliation claim, is unfairly prejudicial to this defendant; and is improper opinion that was not disclosed during discovery.

    D.    The defendant will object to plaintiff offering evidence of opinions by POST officials or employees about whether they believe the plaintiff's actions in April 2000 were proper as immaterial and improper opinion; any interpretation of state law an improper opinion, or opinions about the hiring criteria from any local entity (town, municipality, etc.) as speculation, improper opinion, foundation, relevancy.

**(12) STIPULATIONS OF FACT AND LAW**

None.

**13(b)(1)  PROPOSED VOIR DIRE QUESTIONS**

See Plaintiff's proposed questions attached hereto.

See Defendant's proposed questions attached hereto.

**13(b)(2)  PROPOSED JURY INSTRUCTIONS**

See Defendant's proposed jury instructions attached hereto.

**13(b)(3)  JURY INTERROGATORIES/PROPOSED VERDICT FORM**

See Defendant's proposed jury verdict form.

                    THE PLAINTIFF

By: _____
     Karen Lee Torre
     Law Office of Karen Lee Torre
     51 Elm Street, Suite 307
     New Haven, CT 06510
     Tel.: (203) 865-5541
     Fax: (203) 865-4844
     E-Mail: KTorre@choiceonemail.com

                    THE DEFENDANT

By: _____
     Joseph A. Jordano (ct21487)
     Assistant Attorney General
     55 Elm Street, P.O. Box 120
     Hartford, CT  06141-0120
     Tel:  (860) 808-5340
     Fax: (860) 808-5383
   Email:Joseph.Jordano@po.state.ct.us