Lamote
v.
Leonard

United States District Court
District of Connecticut
FILED AT BRIDGEPORT 3:01 cv998 (SRU)
April 29, 2004
Kevin F. Rowe, Clerk
By: _____ Deputy Clerk

In addition to the above, the plaintiff may call one or more of the individuals listed as witnesses by the defendant.

### For the Defendant

4-20-04

a. **Jack Leonard.** The defendant will address all issues surrounding the plaintiff and the rationale for her reassignment from the polygraph unit. He will testify about facts that pertain to the plaintiff's allegations.

4-21-04
4-22-04

b. **Sgt. Randolph Howell.** He was the plaintiff's supervisor. He will testify about his training, appointment as the supervisor at the polygraph unit, his interaction with the plaintiff, his report of a work rule violation by the plaintiff in April 2000, his response to plaintiff's allegations.

4-22-04
4-28-04

c. **Sgt. Alaric Fox.** He was the state trooper assigned to conduct the investigation into the conduct of the plaintiff of disclosing confidential information in 2000; will testify to his investigation and the findings of the investigation; that he was not influenced any way by the defendant to reach certain results; his interactions with Jack Leonard; Jack Leonard's reputation within the department for integrity.

d. **Captain Vincent McSweeney.** He was the temporary commander in charge of the polygraph unit and was the commanding officer who ordered the investigation into the plaintiff's conduct in 2000. He will testify to his knowledge surrounding those events; his receipt of the IA report from Sgt Fox in May 2000, the required procedure that was followed before disciplined was recommended; his interactions with Jack Leonard; Jack Leonard's reputation within the department for integrity.

4-22-04

e. **Sgt. Robert Eddy.** Sgt. Eddy was a senior polygraph expert in the State Police polygraph unit in June 2000. He will testify to his experience and knowledge of polygraph procedures; the way a polygraph works, the psychological reason why candidates are deliberately told that if they fail the exam they cannot be hired; the different training schools; POST requirement for polygraph, who actually gets the results of applicant polygraph tests; confidentiality requirements; the role of polygraph examiner; that the hiring entity can set own standards for weighing polygraph results in hiring process; POST does not have authority to hire or make recommendations regarding hiring; his review of documents provided to him by the defendant regarding Sgt. Howell; the reasons for his conclusions and communication to the defendant about the documents, his interaction with the plaintiff; instances when he disagreed with other examiner conclusions, including the plaintiff; any other fact pertinent to plaintiff's allegations.

4-22-04

f. **Todd Lynch.** He was the Resident State Trooper assigned to the Town of East Lyme who requested a polygraph to be conducted on a potential employee. He

5

will testify to: to his experience and knowledge of polygraph procedures; the way a polygraph works, POST requirement for polygraph, who actually gets the results of applicant polygraph tests; confidentiality requirements; the role of polygraph examiner; that the hiring entity can set own standards for weighing polygraph results in hiring process; POST does not have authority to hire or make recommendations regarding hiring; his interaction with the plaintiff in 2000; the reason his reported then plaintiff for disclosing confidential information; his statement to Internal Affairs; that the plaintiff stepped over the line by contacting POST and disclosing information about the applicant's polygraph; that the applicant was already certified by POST and employed by the town, any other facts pertinent to the plaintiff allegations.

4·21·04   g.   **Gary Pfeifer.** He was the certification officer for the Connecticut Police Officer Standards and Training ("POST") Council to whom the plaintiff revealed confidential information. He will testify to his knowledge surrounding the communication received by him from the plaintiff.

4.21.04   h.   **Chief William Knapp.**   He was the executive director of POST whom the plaintiff attempted to speak to regarding the applicant. He will testify to the fact that the plaintiff informed him of the town to which the plaintiff had applied.

i.   **Lt. Col. Marjorie Kolpa.**   She will testify that Captain Leonard approached her regarding the criticisms the plaintiff alleged against Sgt. Howell, asked if an investigation was appropriate and the rationale for her decision. She will testify that she was the person who was consulted with by the defendant when the IA report regarding the plaintiff's conduct in April 2000, and the discipline that she approved.

j.   **Jerry McGuire**, state police union representative. He will testify to his knowledge surrounding the discipline handed out to the plaintiff and that at all times she was represented by the union and was fully aware of her decision to voluntarily accept a transfer out of the polygraph unit. He will testify to the difference between a disciplinary transfer and an administrative transfer. He will further testify to the defendant's favorable response to his request to confer with Lt. Col. Kolpa before the plaintiff made her voluntary decision regarding the transfer out of polygraph unit.

k.   **Adrienne LaMorte.** She will testify to all allegations to the complaint.

l.   **Detective Tim Madden.**   Member of the polygraph unit who will testify to his interactions with the plaintiff, his training for polygraph work, his interactions with the defendant; POST and state police standards for polygraphs regarding the hiring of police officers.

m.   **Detective Janice Szcsiul Karcheski.**   . Member of the polygraph unit who will testify to her interactions with the plaintiff, his training for polygraph work, her interactions with the defendant.

6

Lamorte
v.
Leonard

3:01cv998(SRU)

5. Whether the plaintiff was selectively treated differently that other similarly situated employees because of her gender in violation of the Equal Protection Clause?

6. Whether the plaintiff suffered any damages that were proximately caused by the alleged violation of her constitutional rights?

7. Whether the defendant is immune from liability based on the doctrine of qualified immunity?

(7) **TRIAL BY MAGISTRATE**

The case has already been set for trial in April 2004.

(8) **LIST OF WITNESSES**

**For the Plaintiff**

4-19-04
a. The plaintiff, Adrienne LaMorte, will testify as to all allegations in the complaint, her background and job experience, her communications with the defendant and the subsequent adverse actions she suffered.

4-20-04
b. The defendant, John Leonard will testify regarding his involvement in the adverse actions complained of.

4-21-04
c. Joseph Schaedler will be called to testify regarding his communications with the plaintiff regarding the competence of Sgt. Howell.

d. Leighton Hammond will be called to testify regarding his communications with the plaintiff regarding the competence of Sgt. Howell, standards applicable to polygraph examinations and the necessity of adherence to such standards.

e. James Jabbour will be called to testified regarding his communications with the plaintiff regarding the polygraph unit and Sgt. Howell.

4-21-04
f. William Knapp will be called to testify regarding his duties and responsibilities as Post Executive Director, post hiring procedures and requirements, his interaction with the plaintiff and his knowledge of the facts pertinent to a charge of misconduct.

4-21-04
g. Gary Pfeifer will be called to testify regarding his duties and responsibilities as Certification Officer for Post, post practices and hiring standards, and his knowledge of and involvement in charges of misconduct against the plaintiff.

4-28-04
Victor Pepetua, Hartford, Ct. Sworn + Test. (Rebuttal)

4

*LaMorte v Leonard*

*3:01cv998(SRU)*

    n.    **Ronald Savitsky**, Personnel Administrator for DPS. He will testify to progressive discipline and all proper steps were taken regarding the plaintiff and was treated equally as all other members of the State Police would have been treated, the plaintiff's work history and prior AI or IA investigations.

**(9)    DEPOSITION TESTIMONY**

Defendant <u>may</u> offer some or all of the following deposition testimony of Plaintiff:

9:2-11; 16:1-17:18; 29:5-11; 30:1-10; 30:11-14; 31:10-33:7; 34:4-17; 35:8-22; 40:22-41:17; 55:11-21; 56:23-57:1; 57:4-17; 58:6-12; 66:7-15; 70:20-71:9; 77:16-78:11; 80:19-25; 83:4-12; 84:21-25; 87:5-8; 88-94; 94-101; 110:1-16; 111:23-112:9; 124:3-125:16; 15);13-23; 150:24-151:2; 156:12-17; 157:3-11.

**(10)    EXHIBITS**

<u>Plaintiff's Exhibits\</u>

*[handwritten: 4-19-04 Full]*    1.    Trooper Performance Evaluation and Observation Report - Period from 1995-1996.

*[handwritten: 4-19-04 Full]*    2.    Trooper Performance Evaluation and Observation Report - Period from 1996-1997.

*[handwritten: 4-19-04 Full]*    3.    Trooper Performance Evaluation and Observation Report - Period April 1998.

*[handwritten: 4-19-04 ID]*    4.    Letter from Detective James Wardwell to Detective LaMorte, dated March 26, 1998.

*[handwritten: 4-19-04 Full]*    5.    Trooper Performance Evaluation and Observation Report - Period from 1997-1998.

*[handwritten: 4-19-04 Full]*    6.    Trooper Performance Evaluation and Observation Report - Period from 1998-1999.

*[handwritten: -19-04 Full]*    7.    Performance Evaluation of Detective LaMorte between May and October, 1996.

*[handwritten: 1-19-04 Full]*    8.    Performance Evaluation of Detective LaMorte between July 1996 and April 1997

*[handwritten: 1-19-04 Full]*    9.    Trooper of the Month Certificate, dated February 1, 1993.

*[handwritten: 4-19-04 Full]*    10.    Letter from Sandra Kiesel to Lt. Brideau regarding Detective LaMorte, dated November 1988.

*[handwritten: 4-19-04 Full]*    11.    Letter of response from Lt. Brideau to Sandra Kiesel, dated November 14, 1988.

7

4-19-04 Full   12.  Letter from Colonel Perry to John Collins regarding Detective LaMorte, dated April 29, 1994.

4-19-04 Full   13.  Letter from John Collins to Colonel Perry regarding Detective LaMorte, dated April 15, 1994.

4-19-04 Full   14.  Letter from Colonel Kirschner to M.E. Ahern regarding Detective LaMorte, dated June 28, 1995.

4-19-04 Full   15.  Letter from M.E. Ahern to Colonel Kirschner regarding Detective LaMorte, dated June 22, 1995.

4-19-04 Full   16.  Letter from Colonel Kirschner to Edward F. Johnson regarding Detective LaMorte, dated August 29, 1996.

4-19-04 Full   17.  Letter from Edward F. Johnson to Colonel Kirschner regarding Detective LaMorte, dated August 22, 1996.

4-19-04 Full   18.  Letter from Alfred Abbotts to Lt. McGoldrick regarding Trooper LaMorte, dated September 2, 1987.

4-19-04 Full   19.  Letter from Michael Dearington to William McGuire regarding Detective LaMorte, dated September 30, 1997.

20.  Internal Affairs interview of William Knapp.

21.  Internal Affairs interview of Gary Pfeifer.

4-19-04 Full   22.  C.S.P. Polygraph Unit 4-page policy entitled "S.O. #97-1" regarding "specific examination".

4-19-04 Full   23.  C.S.P. Polygraph Unit 3-page policy entitled "S.O. #97-2" relating to "pre-employment examinations".

4-19-04 Full   24.  Complaint against Personnel containing several dates. (Complainant: Randall W. Nauroth)

4-19-04 Full   25.  Complaint against Personnel containing various dates. (Complainant: Vincent E. McSweeney)

4-19-04 Full   26.  C.S.P. Internal Affairs Unit Case Management Log re: Case # I.A.-00-027.

4-19-04 Full   27.  May 17, 2000 memorandum from Alaric J. Fox to Vincent E. McSweeney.

4-19-04 Full   28.  August 14, 2000 letter to plaintiff from defendant.

8

4-19-04 Full 29. Stipulated Agreement signed by plaintiff 9-14-2000.

4-19-04 Full 30. Witness statement of William Knapp dated 5-2-2000.

4-19-04 Full 31. Internal Affairs Investigation - Notice to Personnel (Adrienne Lamorte) dated April 18, 2000 from Captain Vincent E. McSweeney.

4-19-04 Full 32. C.S.P. Guidelines for Internal Investigation Chapters 5.2 et. seq.

4-20-04 Full 33. August 11, 2000 Memorandum from Gladys Traverso Miller to defendant. (Same as "L")

4-19-04 Full 34. C.S.P. A & O Manual Policy Section 5.1.4.

4-21-04 Full 35. August 29, 2000 Memorandum from Gladys Traverso Miller to defendant. (Same as "P")

4-19-04 Full 36. Polygraph Examination Scoring Charts and Numerical Analyses (Collectively as one exhibit). 37 Polygraph Chart, 38 Polygraph Chart, 39 - Score Sheets Full 4-19-04    Full 4-19-04    Full 4-19-04

**Defendant's Exhibits**

4-19-04 Full Exhibit A   Internal Affairs ("IA") 00-027, Complaint Against Personnel Form;

4-19-04 Full Exhibit B   IA 00-027, Case Management Log;

4-19-04 Full Exhibit C   Letter from Captain Vincent McSweeney to LaMorte, dated April 18, 2000;

Exhibit D   Memorandum from Sgt. Todd Lynch to Sgt. Fox, dated April 25, 2000;

Exhibit E   Memorandum from Sgt. Randolph Howell to Sgt. Alaric Fox, dated April 26, 2000;

4-19-04 Full Exhibit F   Division of State Policy Polygraph Unit SO #97-2;

4-19-04 Full Exhibit G   IA 00-027, Statement of William Knapp, dated May 2, 2000;

Exhibit H   Memorandum from Sgt. Todd Lynch to Sgt. Fox, dated May 2, 2000;

4-22-04 ID Exhibit I   IA 00-027, Transcript of Interview with LaMorte, dated May 3, 2000;

4-19-04 Full Exhibit J   IA 00-027, Executive Summary, dated May 17, 2000;

4-22-04 Full Exhibit K   IA 00-027, Internal Affairs Investigation Report, dated May 19, 2000;

4-19-04 Full Exhibit L   Memorandum from Gladys Traverso Miller to Captain Leonard, dated August 11, 2000;

4-20-04 ID Exhibit 40 - Documents generated by Internal Affairs
4-20-04 ID Exhibit 41 - Documents generated by Internal Affairs
4-20-04 ID Exhibit 42 - District Court Pleading Local Rule 9C Statement
4-20-04 ID Exhibit 43   Blue Notebook

| | | |
|---|---|---|
| 4-19-04 Full | Exhibit M ✓ | Letter from Major John Leonard to Adrienne LaMorte, dated August 14, 2000; |
| | Exhibit N | Article 15, Section 4(a) of the State Police Bargaining Unit Contract; |
| 4-19-04 Full | Exhibit O ✓ | Administrative and Operations Manual Section 5.1.4a; |
| 4-19-04 Full | Exhibit P ✓ | Memorandum from Major Leonard to Miller, dated August 29, 2000; |
| 4-20-04 Full | Exhibit Q ✓ | Handwritten Calendar Entries by plaintiff for 8/17/00 and 8/29/00; |
| 4-19-04 Full | Exhibit R ✓ | IA 00-027, Stipulated Agreement, dated September 14, 2000; |
| 4-19-04 Full | Exhibit S ✓ | Administrative and Operations Manual Section 5.2.2; |
| 4-19-04 Full | Exhibit T ✓ | Administrative Inquiry ("AI") 00-025, Complaint Against Personnel Form; |
| 4-19-04 Full | Exhibit U ✓ | AI 00-025, Letter of complaint from candidate to State Police, dated March 4, 2000; |
| 4-19-04 Full | Exhibit V ✓ | Letter from Major Leonard to LaMorte, dated April 12, 2000. |
| 4-19-04 Full | Exhibit W ✓ | AI 00-025, Executive Summary from Sgt. Howell to Major Leonard, dated April 25, 2000; |
| | Exhibit X | IA-88-015 (II) Investigation and Stipulated Agreement, dated June 1998 |
| | Exhibit Y | IA-86-176 Stipulated Agreement, dated February 1987. |
| | Exhibit Z | Defendant's Interrogatories #s 11 and 12, dated February 22, 2002; |
| | Exhibit AA | Plaintiff's Responses to Interrogatories #s 11 and 12, dated May 8, 2002; |

4-19-04 Full Exh BB ✓ Polygraph Examination Scoring Chart & Num. Analysis 10.27.98

(11) ANTICIPATED EVIDENTIARY PROBLEMS/MOTION IN LIMINE

<u>For the plaintiff</u>

    A.    The plaintiff will object to defendant's Exhibits X and Y as wholly irrelevant to the issues in this action.

Full Exh CC ✓ Performance Evaluation - Howell
Full Exh DD ✓ Performance Evaluation - Howell

END

10